## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MYRA GREGORY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-308-SPS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HEALTH AND HUMAN SERVICES,** | ) | |
| **JASON HILL, WILLIAM HAYES, and** | ) | |
| **JOHN DOES 1-30,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff's First Amended Complaint. The Plaintiff has sued the United States of America and the United States Department of Health and Human Services, as well as individuals Jason Hill, William Hayes, and John Does 1-30 based on circumstances surrounding her employment with and termination from the Choctaw Nation Health Services Authority ("CNHSA").[1] The Defendants now seek dismissal of the Plaintiff's allegations against them. For the reasons set forth below, the Court finds that the United States of America's Motion to Dismiss [Docket No. 21] and the Defendants Jason Hill and William Hayes' Motion to Dismiss First Amended Complaint and Brief in Support [Docket No. 22] should be

---

[1] CNHSA is operated by the Choctaw Nation and receives federal funding. Under federal law, medical providers for a tribe under these circumstances are deemed employees of the United States Public Health Service for purposes of the Federal Tort Claims Act. *See* 25 U.S.C. § 5321(d).

GRANTED.

## I. Background

The Plaintiff was a physician hired to work at CNHSA in the spring of 2015.  She

alleges in her First Amended Complaint that CNHSA's executive board—which included

Dr. Hill the chief medical officer, and Dr. Hayes, the chief of staff at CNHSA—complained

about her and criticized her in 2015, and that she was accused later that year of making too

many mistakes.   Additionally, she states that she was told her medical privileges were

revoked and she was subject to "humiliating oversight requirements," including repeated

drug testing.  *See* Docket No. 19, p. 3, ¶¶ 12-18, 20.  She further alleges that Dr. Hayes

accused her of child trafficking.  *Id.*, p. 4, ¶ 19.  The Plaintiff alleges that she was informed

on May 12, 2019 that her employment contract would be terminated in sixty days, but states

that she was asked to vacate the premises while in the middle of treating a patient before

that 60-day period had expired.  *Id.*, p. 4, ¶¶ 25-26.  The Plaintiff asserts that, after her

termination, Dr. Hill and Dr. Hayes made "false and derogatory comments" regarding her

publicly to other CNHSA employees and patients, including stating that she "walked off

the job."[2]  *Id.*, p. 4, ¶ 27.

The Plaintiff attached to her First Amended Complaint a copy of her FTCA Form

95 "Notice of Claim," dated October 4, 2019.  *See* Docket No. 19, Ex. 1.  "A written

document that is attached to the complaint as an exhibit is considered part of the complaint

---

[2] The Plaintiff also makes allegations in her First Amended Complaint related to disparate treatment of female physicians.  However, the Plaintiff has made no claims of discrimination in her First Amended Complaint and the Court therefore declines to recite those allegations here.

and may be considered in a Rule 12(b)(6) dismissal." *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## II. Procedural History

Plaintiff filed her original Complaint in this case on September 8, 2020, against the above-named Defendants. *See* Docket Nos. 1-2. Defendant Hill, Defendant Hayes, and Does 1-30 moved to dismiss the original Complaint, and the Plaintiff filed her First Amended Complaint on November 14, 2020. *See* Docket Nos. 12, 19. In her First Amended Complaint, the Plaintiff's claims are as follows: (i) **Count I**, alleging negligence and negligence per se pursuant to the Federal Tort claims Act ("FTCA") as to Defendant USA; (ii) **Count II,** alleging intentional infliction of emotional distress against all Defendants; (iii) **Count III**, alleging false light as to all Defendants; (iv) **Count IV**, alleging the common law tort of wrongful termination as to Defendant USA; and (v) **Count V**, alleging defamation as to Defendants Hill, Hayes, and Does 1-30. The Defendants then all moved to dismiss the First Amended Complaint on November 30, 2020. *See* Docket Nos. 21-22.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555, 556, 557, 570.

## III. Analysis

The Defendants have all moved to dismiss Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Defendant USA ex rel. Department of Health and Human Services has moved to dismiss the claims against it as representative of CNHSA, *i. e.*, Counts I (negligence and negligence per se), II (intentional infliction of emotional distress), III (false light), and IV (wrongful termination).  Defendant USA contends that the claimant's claims are outside the scope of the FTCA, that this Court lacks subject matter jurisdiction, and that the Plaintiff has failed to state a claim.

Defendants Hill and Hayes (the "CNHSA Officials") have likewise filed a motion to dismiss the claims against them in Count II (intentional infliction of emotional distress), Count III (false light), and Count V (defamation).  The CNHSA Officials contend they are entitled to sovereign immunity, and furthermore, that this Court lacks subject matter jurisdiction and that the Plaintiff has failed to state a claim.

### Subject Matter Jurisdiction as to Defendant USA

The Defendant USA asserts that the negligence, wrongful termination, and intentional infliction of emotion distress claims against it pursuant to the FTCA should be dismissed for lack of subject matter jurisdiction based on the discretionary function

exception found at 18 U.S.C. § 2680(a).  "Because the sovereign may not be sued without its consent, plaintiffs cannot proceed without establishing that the United States has agreed to answer to their claims in court."  *Sydnes v. United States*, 523 F.3d 1179, 1182-1183 (10th Cir. 2008) (*citing United States v. Mitchell,* 463 U.S. 206, 212 (1983)).  The FTCA allows for a limited waiver of sovereign immunity under certain circumstances.  "It allows private parties to bring civil suits against the United States for personal injury or death caused by the negligence or wrongful conduct of government employees within the scope of employment."  *Ball v. United States*, 967 F.3d 1072, 1075 (10th Cir. 2020).

There are a number of problems with the Plaintiff's claims to the extent they are asserted against the USA under the FTCA.  For example, as to the negligence claims, the Plaintiff contends that the USA is liable for the tortious acts of the Individual Defendants and that it breached common law and statutory duties to train, supervise, monitor and discipline its officers and employees (such as the Individual Defendants) and to protect the Plaintiff from their tortious acts.  The Plaintiff does not, however, identify any private individuals whose duty it was to protect her from other CNHSA employees.  See 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]") [emphasis added].  Indeed, if anyone owed such duties to the Plaintiff it would be her employer, the CNHSA, not any of the Individual Defendants (or any other "private individuals") and thus not the USA.  The FTCA is not a vehicle for asserting claims against the USA that would be unavailable against the CNHSA, *e. g.,* because of tribal sovereign immunity.  *See, e. g., Miller v. United States,* 992 F.3d 878, 886 (9th Cir.

2021) ("[W]e note at the outset that Tribes are expressly excluded from coverage under the relevant laws that would preclude a private employer or a federal agency from doing what the Tribe allegedly did here.").   Furthermore, other than passing references to several Oklahoma statutes, the Plaintiff does not identify the source or the substance of the duties she claims were owed to her.   Inasmuch as her employer was the CNHSA, any duties owed to her as a result of that relationship undoubtedly arose as a matter of tribal (not Oklahoma or even federal) law.   The Plaintiff's claim for wrongful termination suffers from the same defects as her negligence claims:   It is a claim more properly asserted against her employer the CNHSA (not against any "private individuals" such as the Individual Defendants and thus not against the USA) and purports to rely on legal bases inapplicable to the CNHSA, *e. g.*, Oklahoma law and Title VII.   Again, the FTCA is not a vehicle for asserting claims against the USA that would be unavailable against the CNHSA because of tribal sovereign immunity. *See, e. g., Miller,* 992 F.3d at 886 ("[W]e note at the outset that Tribes are expressly excluded from coverage under the relevant laws that would preclude a private employer or a federal agency from doing what the Tribe allegedly did here.").

The Plaintiff's claim for intentional infliction of severe emotional distress suffers from different defects.   First, the Court is not convinced that such a claim is cognizable under the FTCA; although a number of courts have found that it is, the Supreme Court has suggested otherwise.   *See Christopher v. Harbury,* 536 U.S. 403, 420 n.19 (2002) (questioning whether an action for intentional infliction of emotional distress "could be maintained under the Federal Tort Claims Act. See 28 U. S. C. § 2680(h) (excluding certain intentional torts including assault, battery, false imprisonment, and misrepresentation)[.]").

But assuming *arguendo* that an intentional infliction claim is not categorically excluded by the FTCA, it would nevertheless be excluded here because it is based upon claims expressly excepted by the FTCA, *i. e.,* the Plaintiff's defamation claims, which are equivalent to claims for libel and slander specifically excepted from coverage under the FTCA.  *See, e. g., Hobdy v. United States,* 968 F.2d 20, 1992 WL 149871, at *, 23 (10th Cir. 1992) (unpublished table opinion) ("Libel and slander are the equivalent of defamation.  An action for defamation involves a false and defamatory communication about another, an unprivileged publication to a third party, fault amounting to at least negligence, and harm.  Claims of injury to reputation caused by communication of defamatory statements to another resound in the heartland of the tort of defamation.") (quotation omitted) (*citing* 28 U.S.C.§ 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of . . . libel [or] slander[.]").  *See also Bohnenkamp v. Whisterbarth,* 2021 WL 1600477, at *7 (W.D. Pa. Apr. 23, 2021) ("[T]he FTCA precludes claims of intentional infliction of emotional distress if they 'arise out' of an enumerated 'exception' under the FTCA."); *Gonzalez-Jiminez D Ruiz v. United States,* 378 F.3d 1229, 1231 n.2 (11th Cir. 2004) ("[I]f the plainitiffs' allegations of deceit are essential to their intentional infliction of emotional distress claim, we lack jurisdiction under the FTCA to entertain that claim.").  The Plaintiff contends that the "Defendants engaged in intentional and malicious professional and character assassination toward Dr. Gregory, including without limitation:  putting her through degrading drug testing; accusing her of child trafficking; lying to her about her medical privileges being suspended; firing then ordering her away from a patient in the middle of treatment; publicly defaming and humiliating her

before her former coworkers and patients, wrongfully and unlawfully blacklisting her to potential employers; and generally making it substantially difficult for her to find new employment." Docket No. 19, pp. 8-9, ¶ 45. The Court finds that Plaintiff's allegations of defamation and slander are essential to her claim of intentional infliction of emotional distress, and the claim therefore arises out of the exception identified in Section 2680(h). The same is true of the Plaintiff's claim for false light; because the defamation allegations are integral to her claim for false light, that claim is excepted from coverage under the FTCA and cannot be asserted against the USA. *See Williams v. United States,* 2018 WL 2056148, at *3 (D. Utah May 2, 2018) ("A claim styled as 'false light' is subject to this exception if it is based on allegedly defamatory statements about the plaintiff.").

These defects aside, most if not all the Plaintiff's claims against the USA are barred by the discretionary function exception provided by 28 U.S.C. § 2680(h). The discretionary function "reasserts the government's immunity for claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Sydnes*, 523 F.3d at 1183 (*quoting* 28 U.S.C. § 2680(a)). In determining whether the discretionary function exception applies, the Court must apply the two-part test identified in *United States v. Gaubert*, 499 U.S. 315 (1991), and *Berkovitz v. United States*, 486 U.S. 531 (1988). "Under [the *Gaubert-Berkovitz*] test, the exception applies if (1) the act or omission on which the claim is based 'involves an element of judgment or choice'; and (2) 'that judgment is of the kind that the discretionary function exception was designed to shield.'" *Miller*, 992 F.3d at 885 (*quoting Berkovitz*, 486 U.S.

-8-

at 536; *Gaubert*, 499 U.S. at 322-323).  *See also Ball v. United States*, 967 F.3d 1072, 1076 (10th Cir. 2020) ("First, we 'determine whether the challenged conduct 'involves an element of judgment or choice,' in which case it is discretionary and falls within the language of the exception, or whether it involves 'a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow,' in which case the exception does not apply.' If the conduct was discretionary, we move to the second step and ask 'whether that judgment is the kind that the discretionary function exception was designed to shield.'") (*quoting Kiehn v. United States*, 984 F.2d 1100, 1102 (10th Cir. 1993) (*quoting Berkovitz*, 486 U.S. at 536)).  "[I]f the conduct 'implicates the exercise of a policy judgment of a social, economic, or political nature,' the discretionary-function exception shields the government from liability."  *Ball*, 967 F.3d at 1076 (*quoting Duke v. Dept. of Agric.*, 131 F.3d 1407, 1411 (10th Cir. 1997)).

"To overcome the discretionary function exception and thus have a chance of establishing a waiver of sovereign immunity, plaintiffs must show that the federal employee's discretion was limited by 'a *federal* statute, regulation, or policy[.]'"  *Sydnes*, 523 F.3d at 1184 (emphasis in original) ("Indeed, the only conceivable way plaintiffs might succeed on their theory is by pointing to a *federal* policy incorporating state tort law as a limit on the discretion of federal employees with the meaning of the FTCA.") (*quoting Berkovitz,* 486 U.S. at 536).  In her response brief, the Plaintiff asserts that her First Amended Complaint *could* be read to constitute violations of the Federal Whistleblower Act, *see* 5 U.S.C. § 2302(b)(8) and/or OSHA, *see* 29 U.S.C. § 660, related to workplace conditions.  But the Plaintiff is merely asserting that those policies *could* apply; no federal

Constitutional right or policy has been identified in her First Amended Complaint, nor has the Plaintiff raised a claim under the Whistleblower Act or for unsafe workplace conditions. *See Miller*, 992 F.3d at 886 ("[W]e note at the outset that Tribes are expressly excluded from coverage under the relevant laws that would preclude a private employer or a federal agency from doing what the Tribe allegedly did here. While the Contract states that tribal employees such as Miller are deemed employees of the Federal Government "[f]or the purpose of *Federal Tort Claims Act* Coverage" (emphasis added), Miller has not contended that the Contract makes him an employee of the Federal Government for purposes of any such antidiscrimination statute or any other federal statute.  Instead, in arguing that the Tribe lacked discretion here, Miller relies only on the Contract itself, federal regulations governing such contracts, and other BIA policies.").   As to her allegations of negligence, intentional infliction of emotional distress, and wrongful termination, the Plaintiff has therefore entirely failed to identify a "discretion-constraining regulation or policy" for *any* of these claims.  *Sydnes*, 523 F.3d at 1185 ("[T]he burden under our case law to present evidence of a discretion-constraining regulation or policy resides with the plaintiffs.") (*citing Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of h[er] overall burden to establish subject matter jurisdiction.") (internal quotations omitted); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) (holding plaintiffs must cite specific regulations the government is alleged to have violated)).   Because the Defendant USA had discretion in its personnel actions, the Court now turns to the second prong.

-10-

"Even though they fail under *Berkovitz*'s first prong, plaintiffs may still overcome the discretionary function exception by demonstrating, pursuant to *Berkovitz*'s second prong, that 'the nature of the actions taken' does not 'implicate public policy concerns, or [is not] 'susceptible to policy analysis.'" *Sydnes*, 523 F.3d at 1185 (*quoting Harrell v. United States*, 443 F.3d 1231, 1236 (10th Cir. 2006)).  Put another way, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.  "Rather than 'ask[ing] whether policy analysis is the *actual* reason for the decision in question,' we ask 'categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.'" *Ball*, 967 F.3d at 1076 (*quoting Sydnes*, 523 F.3d at 1185).  "Nor does the discretionary function exception turn on whether the government's conduct was negligent or wrong." *Binion v. United States*, 2014 WL 5780713, at \*4 (D. Colo. Oct. 31, 2014) (*citing Duke*, 131 F.3d at 1410).  And the Tenth Circuit has "previously and unqualifiedly held that '[d]ecisions regarding employment and termination'—the kind of conduct at issue here—are 'precisely the types of administrative action the discretionary function exception seeks to shield.'" *Sydnes*, 523 F.3d at 1185-1186 (*quoting Richman v. Straley,* 48 F.3d 1139, 1146-1147 (10th Cir. 1995)).  "Whatever may've occurred in the specifics of plaintiffs' situation, employment and termination decisions are, as a class, the kind of matters requiring consideration of a wide range of policy factors, including 'budgetary constraints, public perception, economic conditions, individual backgrounds, office

diversity, experience and employer intuition.'"   *Sydnes*, 523 F.3d at 1186 (*quoting*

*Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C.Cir. 1997)).

The Plaintiff contends that the Defendant USA had no discretion to terminate her

employment because such actions were prohibited by "federal law and federal policy," but

this assertion goes to the merits of her claim and fails to properly support a finding that the

Court has jurisdiction to hear the claim in the first place.  *See Sydnes*, 523 F.3d at 1184

(Plaintiff's argument "conflates the merits of plaintiffs' claims with the question whether

the United States has conferred jurisdiction on the courts to hear those claims in the first

place.").  *See also Binion*, 2014 WL 5780713, at *6 ("The court 'reach[es] the question

whether the federal government is liable for breaching some duty of care under state law if

(and only if) [the court] can first find an applicable waiver of sovereign immunity.'")

(*quoting Sydnes*, 523 F.3d at 1185).  Because Defendant USA's decision, through CNHSA,

"involves an element of choice and is the kind of decision that implicates policy concerns

relating to accomplishing the agency's mission[,] the plaintiffs' suit against the United

States, however strong it may be on the merits, is therefore barred by the discretionary

function exception to the FTCA[.]"  *Sydnes*, 523 F.3d at 1187.  *See also Griffin v. JTSI,*

*Inc.*, 2009 WL 8761211, at *10 (D. Haw. July 28, 2009) ("Even assuming Hayashi abused

his discretion in directing Plaintiffs' removal from the VCC, this type of personnel decision

is susceptible to policy analysis. Thus, the Court finds that the second *Berkovitz* prong is

also satisfied here and the United States has met its burden of proving the applicability of

the discretionary function exception.").  Accordingly, the Plaintiff's claims of negligence

-12-

and negligence per se, intentional infliction of emotional distress, and wrongful termination must be dismissed for lack of subject matter jurisdiction.

Because the Plaintiff has failed to assert actionable claims against the USA under the FTCA, the First Amended Complaint must be dismissed without prejudice for lack of subject matter jurisdiction. The Court is not convinced that actionable claims can be stated by amendment but elects to give the Plaintiff the opportunity to do so and therefore declines to dismiss this action at this time.

### State Law Claims as to the Individual Defendants

Having determined that this court lacks subject matter jurisdiction over Plaintiff's claims as to the Defendant USA ex rel. Department of Health and Human Services, the Court now turns to the Plaintiff's claims as to Defendants Hill and Hayes, and Does 1-30. Defendants Hill and Hayes first contend that they were acting within the scope of their employment for CNHSA and are therefore entitled to sovereign immunity. However, the Plaintiff has not alleged an official capacity claim as to these Defendants; rather, she has alleged individual liability. "[S]overeign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" *Lewis v. Clarke*, _ U.S._, 137 S. Ct. 1285, 1291 (2017) (*quoting Hafer v. Melo*, 502 U.S. 21, 30-31 (1991)). Defendant nevertheless contends that the Plaintiff's allegations are generally made against CNHSA, Hill, and Hayes collectively, asserting that the remedy is therefore truly against the sovereign. *See Lewis*, 137 S. Ct. at 1290 ("In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign."). But here, the Plaintiff

-13-

has made some allegations specific to each of these Defendants, and the Court therefore declines to find that the Defendant USA, as representative of CNHSA, is the real party in interest at this juncture.

The Court therefore turns to the Plaintiff's claims as to Defendants Hill and Hayes for intentional infliction of emotional distress, false light, and defamation. Defendants contend that the Plaintiff's claims are barred by the applicable statutes of limitations and that the Plaintiff has failed to state a claim. As discussed below, the Court finds that the Plaintiff's claim for defamation is barred by Oklahoma's one-year statute of limitations, and that Plaintiff's claims for intentional infliction of emotional distress and false light should be dismissed for failure to state a claim for relief.

**Defamation.** Under Oklahoma law, defamation claims are subject to a one-year statute of limitations. *See* 12 Okla. Stat. § 95(A)(4). *See also Chouteau v. Enid Memorial Hosp.*, 1991 WL 498655, at *3 (W.D. Okla. Nov. 8, 1991) ("Oklahoma's statute of limitation bars a defamation cause of action. Libel and slander actions have a one-year statute of limitations under Oklahoma law.") (*citing* 12 Okla. Stat. § 95(4)). Here, the Plaintiff filed this case on September 8, 2020, meaning that the alleged conduct must have occurred on or after September 8, 2019 in order to fall within the applicable statute of limitations. In her First Amended Complaint, the Plaintiff alleges that she was informed on May 12, 2019 that her employment contract would be terminated in 60 days, but that she was terminated "[b]efore that 60-day period had expired." *See* Docket No. 19, p. 4, ¶¶ 25-26. She then alleges that "[f]ollowing her termination, Drs. Hill and Hayes have made false and derogatory comments about Dr. Gregory publicly to other CNHSA

-14-

employees and patients." *Id.*, ¶ 27. The Plaintiff's First Amended Complaint contains no information to support a finding that her claims fall within the applicable statute of limitations because she was terminated at least two months prior to September 8, 2019 and there is no other date to reference these allegations.

The Court nevertheless recognizes that the Plaintiff's claims of defamation encompass comments made after her termination, but on some unspecified date that could theoretically fall within the statute of limitations. But even assuming *arguendo* that those alleged comments fall within the statute of limitations, the Plaintiff has not sufficiently stated a claim as to each of these Defendants. The First Amended Complaint only states that "Drs. Hill and Hayes have made false and derogatory comments about Dr. Gregory publicly to other CNHSA employees and patients." *See* Docket No. 19, p. 4, ¶ 27. The Court is therefore unable to discern what "false and derogatory statements" were made or when, nor which Defendant made these allegedly defamatory statements against her. This is insufficient to meet the pleading requirements of Fed. R. Civ. P. 8(a). *See Bruton v. Oklahoma Dept. of Corr.*, 2019 WL 3413853, at *6 (W.D. Okla. July 29, 2019) ("Because Plaintiff has not parsed out her claims sufficiently as to each Defendant, the Court cannot discern which Defendant allegedly made a defamatory statement about Ms. Bruton, nor ascertain which defendant she seeks to hold liable for the alleged defamatory statements. Plaintiff's defamation claim fails to meet the pleading standards set forth in Rule 8 and accordingly, her defamation claim is hereby DISMISSED."). The Plaintiff's claim for defamation should therefore be dismissed.

The remaining two claims, intentional infliction of emotional distress and false light, have a two-year statute of limitations. *See Colbert v. World Pub. Co.*, 1987 OK 116, ¶ 8, 747 P.2d 286, 289 ("The proper limitation period in which to commence an action to recover for mental anguish and emotional distress under the theory of false light invasion of privacy is two years."); *Williams v. Lee Way Motor Freight, Inc.*, 1984 OK 64, ¶¶ 1, 8, 688 P.2d 1294, 1295 & 1298 ("[T]he applicable statute of limitations for the tort of intentional infliction of emotional distress is 12 O.S. 1981 § 95(3) [two years]."). *See also Powell v. Crescent Servs., LLC*, 2020 WL 5015148, at *5 (W.D. Okla. June 12, 2020) ("In Oklahoma, a claim for intentional infliction of emotional distress is subject to a two-year limitations period, running from when 'the cause of action shall have accrued.'") (*citing* 12 Okla. Stat. § 95(3) and *Williams*, 1984 OK 64, ¶¶ 1, 8, 688 P.2d at 1297). Under Oklahoma's "discovery rule," "'the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury.'" *Erikson v. Farmers Group, Inc.*, 151 Fed. Appx, 672, 676 (10th Cir. 2005) (*quoting The Samuel Roberts Noble Found., Inc. v. Vick*, 1992 OK 140, ¶ 22, 840 P.2d 619, 624). But "[e]ven under the discovery rule, a plaintiff is required to pursue claims with diligence. The statute of limitations is not tolled simply because a plaintiff 'negligently refrain[s] from prosecuting inquiries plainly suggested by the facts.' Accordingly, a plaintiff is charged with having knowledge of those facts which ought to have been discoverable in the exercise of reasonable diligence." *Erikson*, 151 Fed. Appx. at 676 (*quoting Daugherty v. Farmers Coop. Ass'n,* 1984 OK 72, ¶ 12, 689 P.2d 947, 951). Here, the claimant's termination is well within the two-year statute of limitations, as are any claims related to statements made following her

termination.   Although acts prior to September 8, 2018 may be outside the applicable statute of limitations, the Court finds that the Plaintiff's claims of intentional infliction of emotional distress and false light should not wholly be dismissed pursuant to the applicable statute of limitations and therefore proceeds to assess whether Plaintiff has sufficiently alleged a claim for relief.

**Intentional Inflict of Emotional Distress.**   "To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735.   "The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Breeden v. League Servs. Corp.*, 1978 OK 27, 575 P.2d 1374, 1377.   "Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to a jury." *Eddy v. Brown*, 1986 OK 3, ¶ 6, 715 P.2d 74, 76-77.   It is important here to note that "[w]ork place discrimination cases rarely present facts sufficient to constitute the type of extreme and outrageous behavior required to state a claim for IIED." *Puckett v. Spirit Aerosystems, Inc.*, 2013 WL 1944889, at *2 (N.D. Okla. May 9, 2013). *See also Taverna v. First Wave, Inc.*, 2010 WL 4930583, at *13 (N.D. Okla. Nov. 30, 2010) ("In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that

defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff.") (collecting cases).

As to Dr. Hayes specifically, the Plaintiff alleges the Dr. Hayes accused her of engaging in child trafficking, and that he laughed and told her that her medical privileges had not been revoked when she asked them to be reinstated.  *See* Docket No. 19, pp. 4, ¶¶ 19, 24.  As to Dr. Hill, the Plaintiff alleges that he and Dr. Hayes had "made false and derogatory comments" about her, and that they had "a lengthy history of using legitimate medical review techniques in ways to intimidate, threaten and professionally damage female physicians."  *See* Docket No. 19, pp. 4-5, ¶¶ 27, 28.  She then states that Defendants (collectively) "engaged in intentional and malicious professional and character assassination towards Dr. Gregory, including without limitation:  putting her through degrading drug testing; accusing her of child trafficking; lying to her about her medical privileges being suspended; firing then ordering her away from a patient in the middle of treatment; publicly defaming and humiliating her before her former coworkers and patients, wrongfully and unlawfully blacklisting her to potential employers; and generally making it substantially difficult for her to find new employment."  *See* Docket No. 19, pp. 8-9, ¶ 45.

The Court finds first that these allegations are not sufficiently specific as to each of the named Defendants as to time or perpetrator.  *See Bruton*, 2019 WL 3413853, at *6 ("Because Plaintiff has not parsed out her claims sufficiently as to each Defendant, the Court cannot discern which Defendant allegedly made a defamatory statement about Ms. Bruton, nor ascertain which defendant she seeks to hold liable for the alleged defamatory

-18-

statements. Plaintiff's defamation claim fails to meet the pleading standards set forth in Rule 8 and accordingly, her defamation claim is hereby DISMISSED.").  Furthermore, the Court finds that these allegations are not so extreme and outrageous as to justify submission of the claim to a jury.  The Plaintiff's allegations, in addition to being generically directed at all Defendants, are generally in the vein of "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities." *Eddy*, 1986 OK 3, ¶ 7, 715 P.2d at 77 ("Liability for the tort of outrage does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind[.]") (quotation omitted). Though certainly unpleasant if true, the Court finds that these allegations have not "so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress."  *Miller v. Miller*, 1998 OK 24, ¶ 33, 956 P.2d 887, 901. Accordingly, the Plaintiff's claim of defamation should be dismissed for failure to state a claim.

**False Light**.  "In order to recover for false light invasion of privacy, the plaintiff must show (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Mitchell v. Griffin Television, L.L.C.*,

-19-

2002 OK CIV APP 115, ¶ 7, 60 P.3d 1058, 1061 (*citing McCormack v. Oklahoma Pub. Co.*, 1980 OK 98, 613 P.2d 737, 740).  When recognizing this tort, the Oklahoma Supreme Court "was careful to avoid the implication that a lawsuit could be premised on mere harm to one's feelings."  *Colbert v. World Pub. Co.*, 1987 OK 116, ¶ 10, 747 P. 2d 286, 289-290.  Furthermore, the Oklahoma Supreme Court found it was "a product of the same societal need as the tort of outrage or intentional infliction of emotional distress[.]"  *Id.*, 1987 OK 116, ¶ 16, 747 P.2d at 292.

In addition to the allegations as to defamation, the Plaintiff alleges in her false light claim that "Dr. Hill, Dr. Hayes, and John Does 1-30 publicly accused Dr. Gregory of committing negligent and injurious acts on her patients to numerous CNHSA employees and the public in general, they questioned her medical decision-making and accused her of making inappropriate medical decisions and publicly stated to Dr. Gregory's former patients that she 'walked off the job.'"  *See* Docket No. 19, p. 10, ¶ 50.  She further alleges that the intention of these publications was "to place [her] before the public in a false and negative light."  *Id.*  Additionally, she stated that Dr. Hill and Dr. Hayes knew these statements would be highly offensive, that they knew she had not walked off the job, and that they made these statements recklessly with actual malice of falsity.  *Id.*, ¶¶ 51-53.

The Court finds that the Plaintiff has failed to state a claim for false light.  The allegations again lack specificity as to each of the Individual Defendants.  *See Bruton*, 2019 WL 3413853, at *6.  Moreover, these allegations fail to sufficiently allege the nature of the publication, the timing of publication, or to whom specifically publication was made. *See Myers v. Alliance for Affordable Services*, 371 Fed. Appx. 950, 959 (10th Cir. 2010)

("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.") (quotation omitted).  Accordingly, the Plaintiff's claim of false light should be dismissed for failure to state a claim.

The Plaintiff has had one previous opportunity to amend her claims.  Nevertheless, because the Court is not convinced that amendment would be futile at this time, and because the Court is affording the Plaintiff the opportunity to amend her claims against the USA, the Court will likewise afford the Plaintiff one more chance to amend her claims against the Individual Defendants.

## CONCLUSION

In sum, the Court finds that the Plaintiff's claims as to the Defendant USA, ex rel., U.S. Department of Health and Human Services, should be dismissed for lack of subject matter jurisdiction without prejudice.  *See Kelly v. Wilson*, 426 Fed. Appx. 629, 633 (10th Cir. 2011) ("A dismissal for lack of subject matter jurisdiction must be without prejudice[.]) (*citing Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006). Furthermore, the Court finds that the Plaintiff's state law claims as to Defendants Hill, Hayes, and Does 1-30 should be dismissed without prejudice for failure to state a claim. The Plaintiffs is hereby granted leave to file a second amended complaint within fourteen days hereof.

Accordingly, the Court finds that the United States of America's Motion to Dismiss [Docket No. 21] and the Defendants Jason Hill and William Hayes' Motion to Dismiss First Amended Complaint and Brief in Support [Docket No. 22] are hereby GRANTED.

The Defendant Jason Hill's Motion to Quash Deposition [Docket No. 34] is hereby DENIED as MOOT.

IT IS SO ORDERED this 23rd day of November, 2021.

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**